[Civ. No. 5334. First Appellate District, Division One.—June 13, 1927.]

## EMILIE E. RIECK, Respondent, v. ARTHUR E. T. CHAPMAN, Appellant.

[1] ATTORNEY AND CLIENT—CONFIDENTIAL RELATIONS—GOOD FAITH.—The relation of attorney and client is one of highest trust and confidence, requiring on the part of the attorney the utmost good faith and honesty.

[2] ID.—MONEY HAD AND RECEIVED—ACCOUNTING—EVIDENCE—FINDINGS.—In this action by a client against her former attorney for money had and received and for an accounting, the evidence was sufficient to support the conclusion of the trial judge that the attorney had in his possession certain moneys belonging to his client for which he had failed to account.

---

(1) 6 C. J., p. 686, n. 20.    (2) 6 C. J., p. 693, n. 82.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles S. Burnell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Robert M. Clarke and Albert Sidney Brown for Appellant.

Youngworth, McClean & Hartman and Wm. B. Ogden for Respondent.

TYLER, P. J.—Action by a client against her former attorney for money had and received and an accounting.

The complaint contains three causes of action. Under the first it is alleged in substance that on or about the first day of May, 1919, plaintiff employed the defendant as her

---

1. See 3 Cal. Jur. 623; 2 R. C. L. 966.

legal adviser at an agreed fee of $10,000, which sum plaintiff paid to the defendant; that between the first day of May, 1919, and the first day of November, 1920, plaintiff paid into the hands of defendant at his request, but for her use and benefit, the sum of $6,950.75, for which defendant promised and agreed to truly and honestly account for, which he failed to do. The second cause of action alleges that between the sixth day of August, 1919, and the first day of January, 1921, the defendant received from divers and sundry persons the sum of $8,093.95 to and for the use of plaintiff. The third sets forth that between the first day of January, 1920, and the thirty-first day of December, 1920, plaintiff, at the request and upon the advice of defendant, paid into his hands the sum of $20,500 which defendant represented he could loan to third persons upon their secured promissory notes, and that, acting upon such promise, plaintiff paid over to defendant said sum to be used for such purpose. That thereafter plaintiff demanded of defendant an accounting of the money so received; that in compliance therewith defendant delivered to plaintiff five promissory notes and mortgages purporting to secure the principal sum of $20,500; that plaintiff thereafter discovered that one of said notes represented an indebtedness from defendant to plaintiff which was secured by a mortgage upon property standing in the name of a third person who held the legal title thereto to the use of defendant, but that such security was insufficient in value to secure the payment of the note; that another of said notes represented an indebtedness of a business partner or associate of defendant and was secured by a second lien of mortgage upon real property of insufficient value to secure the payment thereof; that the remaining notes were also secured by mortgages upon property insufficient in value; that plaintiff upon discovering the facts offered to rescind and reassign and return the notes to defendant, who refused to accept the same or repay plaintiff her money. The prayer is for an accounting and general relief. Defendant in his answer denied the allegations of plaintiff's complaint and by way of counterclaim set up that on or about May 1, 1919, she received from him the sum of $2,000, which she agreed to pay upon demand; that thereafter defendant demanded payment thereof, but plaintiff failed

to pay the same. Defendant also filed a cross-complaint and in the second cause of action therein set forth, alleged that he had rendered professional services as an attorney to plaintiff in the sum of $25,000, of which only $15,867.75 had been paid, leaving a balance due in the sum of $9,132.25, for which sum judgment was prayed. The allegations of the cross-complaint were denied by plaintiff. At the close of the trial judgment was rendered that cross-complainant Chapman take nothing by his cross-action; that plaintiff and cross-defendant have and recover the sum of $5,452.59. Motion for a new trial was made and denied. The appeal is from the judgment and order.

[1] The sole question here presented is the sufficiency of the evidence to support the findings. From a careful reading of the entire testimony we are of the opinion that the findings are fully supported by the evidence. The relation of attorney and client is one of the highest trust and confidence, requiring on the part of the attorney the utmost of good faith and honesty. A client, and especially a woman without business experience, as the record shows plaintiff to have been, is largely, if not wholly, guided and influenced by the advice of the attorney, for which reason his conduct and acts, when questioned, should be closely scrutinized, and the burden is upon him to show that he has been fair and honest. That plaintiff did have full confidence in defendant, there is no doubt. Certain allegations in his answer indicate that he not only won his client's complete confidence, but her affections as well, and she testified that no one else had so completely controlled her. In disposing of the case the learned trial judge filed a written opinion and ordered that findings be prepared in conformity with the views therein expressed. As his conclusion carefully reviews the facts, we adopt it as part of this opinion. It is as follows:

"This is an action for accounting between a client and her former attorney. The evidence shows that the defendant, Mr. Chapman, was first employed by Mrs. Rieck, the plaintiff, in February, 1919, for the purpose of securing a divorce for her and handling negotiations regarding a property settlement between herself and husband. Apparently, various sums of money were paid by the plaintiff to Mr. Chapman, of which neither party kept any record. The

plaintiff, unfortunately, was able to assist the court but little, her testimony being most vague and unsatisfactory. It may be said, in fact, that she displayed a most lamentable ignorance concerning her affairs, and a lack of memory that verged upon the extreme. The matter and manner of her testimony during the trial of this case would indicate that Mrs. Rieck was a woman almost devoid of business acumen and of knowledge of business affairs. This being the case, it would seem to have been particularly incumbent upon the defendant to have so handled her affairs that no doubt whatever could be cast upon any of the transactions between them. It appears, however, that Mr. Chapman kept no account whatever, and both parties were compelled to rely upon their memories as to the purpose for which payments were made by Mrs. Rieck, and as to the purposes for which money was expended by Mr. Chapman, and as to the amounts expended by the latter on behalf of his client.

"It appears that for his services in and about the divorce action and the property settlement it was agreed that Mrs. Rieck should pay Mr. Chapman a fee of $10,000. And at this point it may be well to note that one branch of the case involves the question of what arrangement was made as to this fee, the plaintiff contending that $10,000 was to cover all of the services and that she guaranteed to pay him that amount if he did not secure it from Mr. Rieck; the defendant, on the other hand, claiming that the arrangement was that he was to receive a fee of $10,000 from Mrs. Rieck irrespective of any amount which he might succeed in obtaining from Mr. Rieck. The question of the fee will be discussed later on in this opinion.

"It also appears that this $10,000 was paid by Mrs. Rieck to Mr. Chapman, not in cash, but in United States Liberty bonds in the denomination of $1,000 each, Mr. Chapman's contention in this regard being that these bonds, which at the time of their receipt by him had a market value of $830 each, were not taken at their par value, but at their market value. And on this point I am inclined to agree with Mr. Chapman, because it appears from the testimony that subsequently Mrs. Rieck took back two of these bonds, paying full par value for them.

"Without attempting to go into details of the transactions between the parties or to review the evidence in detail, it may be stated that the evidence shows to the satisfaction of the court that Mr. Chapman received the following sums for or on behalf of Mrs. Rieck, most of them being evidenced by exhibits filed in the case."

The amounts of these exhibits are then set forth. They total the sum of $8,448.62. The opinion continues:

"This sum of $8,448.62 is, of course, irrespective of the $10,000 fee.

"I find that the defendant, Mr. Chapman, is entitled to the following credits, the respective items being evidenced in some cases by exhibits filed in this action."

Then follows an enumeration of defendant's exhibits totaling the sum of $6,386.03. Continuing, the opinion recites:

"Deducting the latter amount from the $8,448.62 received by the defendant leaves a balance of $2,062.59 unaccounted for by the defendant, and which the court finds due from defendant to plaintiff.

"Turning now to the subject of fees, the evidence was extremely conflicting as to a written agreement signed by the parties covering this matter. This agreement was prepared in the office of Mr. Chapman, and apparently no copy was furnished to his client. It remained in his possession for some time, and Mr. Chapman testifies it was inadvertently lost or destroyed. The testimony of the plaintiff and her witnesses is to the effect that this agreement was in the nature of a guarantee that Mr. Chapman should receive at least $10,000 as fees and that if he did not succeed in obtaining this amount from Mr. Rieck she would either pay the same or make up the deficit. Mr. Chapman and his witnesses, on the other hand, testify that the agreement bound Mrs. Rieck to pay $10,000 to Mr. Chapman, irrespective of any sum he should receive from her husband. It seems exceedingly strange that an attorney preparing such an agreement should not supply his client with a copy; and it further seems a strange circumstance that this agreement should have been lost or destroyed, important as it was to Mr. Chapman. It further seems very strange that a lawyer should prepare such an agree-

ment without at the same time making an office copy. But this carelessness seems to be on a par with the other financial and business transactions between the parties.

"With respect to the terms of the agreement referred to, I find that it was in accordance with the testimony of the plaintiff and that $10,000 was the total fee charged and agreed upon. I am more inclined to this view because the nature and value of the services as testified to would seem, in my opinion, to have been most liberally compensated by a fee of this size, bearing in mind that Mr. Chapman's efforts did not result in obtaining the whole of the very large property settlement secured by the plaintiff, but at most in raising it from $150,000, the sum offered by Mr. Rieck, to $200,000.

"The evidence shows that Mr. Chapman received from Mr. Rieck the sum of $6,250 to be applied on attorney's fees, certain attorneys in Pittsburg who represented Mrs. Rieck at that place, where Mr. Rieck resided, sharing in the total sum paid by Mr. Rieck for legal services rendered to Mrs. Rieck in and about the divorce and property settlement. Mr. Chapman received from Mrs. Rieck the sum of $2,000 through the redemption by her of two of the Liberty bonds originally paid him, and he further received eight Liberty bonds at a value of $830 apiece, making a total of $6,640. The total amount received by him, therefore, was $14,890. Mr. Chapman, therefore, was overpaid in the sum of $4,890, and should account to Mrs. Rieck for this amount in addition to the amount heretofore found.

"Mr. Chapman in his cross-complaint claims to be entitled to additional fees for services rendered subsequent to and apart from the divorce and property settlement case. His testimony as to this is to the effect that he drew several wills for Mrs. Rieck, one for another person at her request, that he attended to certain property matters for her, advised her with relation to a motorcycle in which she was hurt, and gave her a great number of consultations at his office. I find that these subsequent services were of the value of $1,500, which in the final accounting should be deducted from the amount found due from Mr. Chapman to Mrs. Rieck. The figures may be summarized as follows:

Due from defendant to plaintiff on the
  accounting apart from attorney's fees..$2,062.59
Due from defendant to plaintiff on ac-
  count of attorneys overpaid........... 4,890.00

      Total  ........................$6,952.59
Due from plaintiff to defendant for legal
  services outside of divorce and property
  settlement matter  .................. 1,500.00

Balance due from defendant to plaintiff..$5,452.59

"As to the defense that an accounting has already been had between the parties the finding will be for the plaintiff.

"In conclusion . . . the relations between the parties were of a fiduciary nature. The plaintiff is very evidently a woman utterly unused to business affairs. She left everything to Mr. Chapman in the fullest trust and confidence. She paid him large sums of money apparently whenever he requested her to do so. It would seem that the most ordinary prudence and good faith, to say nothing of proper business methods, would have suggested to the defendant—nay, would have commanded him—to keep a proper account of every sum received from his client and of every sum spent on her behalf; instead of which it appears that no record whatever was made in any book of account or otherwise of any sum paid to the attorney by his client, nor did the former even give receipts to the latter.

"Counsel for the plaintiff will, unless findings be waived, prepare findings and a judgment in accordance with the foregoing.

"Dated, February 1, 1923.
                    "(Signed)   CHARLES S. BURNELL,
                                          "Judge."

[2] The conclusion reached by the learned trial court finds full support in the evidence. No other question is presented.

The judgment and order are affirmed.

Cashin, J., and Knight, J., concurred.